HAROLD D. GLYNN, Employee-Plaintiff v. PEPCOM INDUSTRIES, INC., Employer and CRAWFORD AND COMPANY, Carrier-Defendants

No. COA95-347

(Filed 7 May 1996)

**Workers' Compensation § 165 (NCI4th)— back injury during judicially cognizable time period—sufficiency of evidence—credibility of medical evidence—good cause to receive additional evidence—error by Commission**

The Industrial Commission erred in finding as a fact and concluding as a matter of law that plaintiff did not sustain a specific traumatic incident on 23 June 1993, erred in concluding that there was insufficient medical evidence to support a finding that plaintiff's massive herniated disc was caused by a specific incident on 23 June 1993, and erred in failing to allow plaintiff's motion to reopen the evidence and depose a medical witness since plaintiff presented credible and competent evidence that he sustained a

compensable injury during a judicially cognizable time period; plaintiff's medical evidence with regard to his injury was compelling, especially since defendant did not provide any medical evidence to contradict the medical evidence offered by three of plaintiff's doctors; and in light of the Commission's finding that the medical evidence was insufficient, allowing additional medical evidence to be taken would constitute good cause sufficient to allow plaintiff's motion to reopen the evidence in order to depose another doctor.

**Am Jur 2d, Workers' Compensation § 593.**

Appeal by plaintiff from opinion and award entered 27 December 1994 by the Full Commission of the North Carolina Industrial Commission. Heard in the Court of Appeals 19 March 1996.

*Twiford, Morrison, O'Neal & Vincent, by Branch W. Vincent, III, for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by C. Ernest Simons, Jr., for defendant-appellee.*

JOHNSON, Judge.

Plaintiff Harold Glynn is a thirty-one year old married male with a high school education. After serving in the Air Force for ten years, plaintiff was honorably discharged in December 1992. Thereafter, he went to work for defendant as a route sales representative in February 1993. Plaintiff's duties involved driving a route truck to ten to twelve stores a day where he would inventory, sell and stock drinks by the case. Prior to 23 June 1993, plaintiff did not have any major physical or medical problems. On 8 February 1993, plaintiff was examined by Dr. Wilkerson, and the physical showed no abnormalities. The physical demands of the job required plaintiff to load trucks and remove the inventory of soda out of the truck onto a hand cart and take the drinks into the stores where he would stack them as needed in each particular store.

On the morning of 23 June 1993, plaintiff made his first stop at Seamark Foods in Nags Head, North Carolina. Instead of going to Seamark, he went to New York Bagels first and took an order, went out to the truck, retrieved the sodas and brought them back into the store. He had the store attendant count them and sign the ticket and make payment. At approximately 7:30 a.m., plaintiff began to unload

the drinks, taking them from his right to left off the pull cart and stacking them onto the shelves. After stacking two to three cases, plaintiff reached to grab another case and while turning to place the case on the shelf, he felt a very sharp, severe kind of breathtaking pain in his lower back. The sharp pain was right in the middle of his back. The pain was so severe that it made him feel nauseous. After the initial pain had passed, he finished what he was doing and went to Seamark Foods.

Still in pain, plaintiff went to Seamark and basically straightened up a few things and took in ten or fifteen cases of soda. Seamark is normally a sixty to seventy case stop. Because of the way he was feeling, plaintiff was unable to complete stocking Seamark because he was in too much pain and was getting weaker by the minute. Plaintiff returned to defendant's plant and talked to the supervisor, David Ward. Thereafter, Mr. Ward sent plaintiff to Beach Medical to be examined.

Plaintiff was seen by Dr. Mark Channer who examined him and performed an x-ray on his lower back. Thereafter, he went to Coastal Rehabilitation. While in rehabilitation, an examiner asked plaintiff to put his toes under his left foot, which he could not do. He could not raise his foot or his toes. At that point, plaintiff was referred by Dr. James S. Wilkerson, Jr. for an MRI study to be taken at Albemarle Hospital. On 29 June 1993, plaintiff had an MRI of the lumbar spine conducted. The result of the MRI study showed a disc space narrowing with degeneration and with a large mostly left-sided herniation at the L5 S1 level. After the MRI results were performed, Dr. Wilkerson referred plaintiff to Dr. David C. Waters, a neurosurgeon, in Norfolk, Virginia.

Dr. Wilkerson first saw plaintiff on 9 July 1993. The history taken by Dr. Waters states:

The patient began to have problems on or about June 10, 1993. He noted that, after working, he had experienced non-specific cramping in the buttock and posterior aspect of the thigh. On June 23rd, during a lifting episode at work, he had the abrupt onset of fairly severe and intense pain in the right buttock and pain in the left lower extremity. This pain was very intense and quite disabling. Approximately three days later, the patient became abruptly weak in the left ankle and developed numbness and tingling on the posterior aspect of the left leg. Since June 23rd, his symptom complex has remained stable.

GLYNN v. PEPCOM INDUSTRIES

[122 N.C. App. 348 (1996)]

On 12 July 1993, at the request of defendant insurance company, plaintiff was seen for a "second opinion consultation" by Dr. Berkley L. Rish in Norfolk, Virginia. The summary taken by Dr. Rish reports that:

> This 30-year-old routeman for Pepsi Cola was lifting a case of drinks on 6/23/93, and had a sudden sharp pain in his low back radiating into his buttock and leg. Since that time, he has been grossly encumbered with pain, numbness, and weakness involving the left sciatic parameters. At the present time, he has significant foot drop on the left foot mechanisms.

After these opinions, plaintiff underwent surgery on 13 July 1993 for left L5-S1 diskectomy and removal of an extruded disc fragment foraminotomy over S1 nerve route, and inspection of the L5 nerve route. After the surgery, plaintiff had three follow-up visits—19 August, 10 September and 8 October 1993. On 8 October, plaintiff was released to work without restrictions.

In an effort to alleviate the necessity of medical depositions, counsel for plaintiff obtained a narrative medical report from Dr. Waters dated 3 December 1993. The patient history contained within the narrative medical report states that:

> On June 23, 1993, after a specific lifting episode at work, he had the fairly abrupt onset of fairly severe pain in the left buttock and left lower extremity. This pain was quite intense and disabling. Approximately three days later, the patient became abruptly weak in the left ankle and developed numbness and tingling in the posterior aspect of the left leg. Since June 23rd, his weakness and pain complaints have been static and non-progressive. There had been no back pain. There had been no right leg symptoms.
>
> . . .
>
> I am of the opinion that Mr. Glynn's work at Pepsi-Cola is directly related to his disc herniation and subsequent need for surgery.

Kimberly Glynn, plaintiff's wife, also testified at the hearing. She testified that two weeks before 23 June 1993, plaintiff had some complaints of pain in his left buttock. This pain did not prohibit plaintiff from working or doing anything around the house. He basically carried on his same routine. On 23 June 1993, Mrs. Glynn was at her parent's house in Newport News, Virginia. She testified that around 5:00 p.m. or 6:00 p.m., she received a telephone call from plaintiff. Plaintiff

told her that he had some bad news. He explained to her how he had stopped at New York Bagels and was turning a case in his hand and felt an extremely sharp pain from his back that radiated to his toes. Plaintiff further stated to her on the telephone that it had made him sick to his stomach. Mrs. Glynn returned home the next day and was with him 24 hours a day thereafter. She noted that his condition deteriorated daily.

Prior to 23 June 1993, Mrs. Glynn did not notice plaintiff having any physical problems moving around. After 23 June, however, she noticed him beginning to limp and she also noted his toes beginning to drag the ground because he could not lift his foot. This was in direct contrast between the way he acted before 23 June 1993. Before 23 June Mrs. Glynn would massage plaintiff's left buttock. After 23 June, she described the appearance of the buttock as "like somebody had let the air out of a balloon. It just—there was nothing there. It was deflated."

Chris Trumble, a route manager with defendant, testified at the hearing. In part of his testimony, Mr. Trumble stated that he was familiar with the job description for plaintiff/employee. Part of the job description involved "honesty." When asked about plaintiff's reputation for honesty, Mr. Trumble testified, "I have no reason to doubt his honesty. He has never come out and lied to me specifically to any of my questions. I have never had that concern or that problem."

On 29 June 1993, at 11:20 a.m., plaintiff was interviewed by Raybon Mayes who was an adjuster with Crawford & Company. When asked what happened, plaintiff stated, "basically, I was just lifting a case of soda and I received a sharp pain in my lower back and it kind of . . . the sharp pain kind of went through my lower back and down into my leg and it's (inaudible) gradually gotten worse, as the days have gone on since then. I wish there was more of a story, but that's it."

QUESTION:   Was the pain in your upper back or lower back?

ANSWER:     It's in my lower back and down my left leg.

QUESTION:   Had you experienced any pain in your back prior to this?

ANSWER:     Ah, for about two weeks prior to that, after work one evening, I noticed I just had just like a little aggravation down my left leg. I mean, nothing I

couldn't work with, but, yeah, just a little bit of aggravation I guess is the best way to put it, kind of a crampy feeling. But prior to that, you know, I could work with it with no difficulty. Wednesday, the 23rd, like I said, I felt that real sharp pain in my back and it kind of took my breath away and (inaudible) kind of gone down hill in a real quick manner.

David Ward testified that he was the area manager for defendant and was the person who hired plaintiff. He testified that prior to 23 June 1993, he had conversation with plaintiff regarding his leg problems. Mr. Ward testified that plaintiff told him that he had been having pain in his lower back that ran down through his left leg, or cramps. Mr. Ward testified that he asked plaintiff two weeks before 23 June 1993 whether he had hurt himself on the job by twisting the wrong way or by picking something up the wrong way or by stepping off the truck or something like that, and plaintiff told him that was not the case.

Mr. Ward testified that he saw plaintiff on 23 June 1993. Mr. Ward testified that plaintiff called him that morning from Seamark and said that his back was hurting. Mr. Ward advised plaintiff to come back to the plant. Once plaintiff returned to the plant, they filled out the Form 19. Defendant relies upon the discrepancy in plaintiff's evidence, the description of his injury in a previous report and the Form 19 in their defense that there was no "specific traumatic incident."

The opinion and award of the Commission found that plaintiff's injury resulted from a gradual deterioration of his back condition, occurring two weeks prior to the incident on 23 June 1993; that plaintiff was not credible; and that his injury did not have a specific traumatic incident. In the alternative, the Commission held that the medical evidence was insufficient even supposing there was a specific traumatic incident on 23 June 1993. They concluded that plaintiff's claim was denied. Commissioner J. Randolph Ward dissented, stating that the medical evidence was compelling, and that the motion to reopen the evidence should have been allowed. Plaintiff appeals from the opinion and award of the Commission.

Plaintiff first argues that the Full Commission erred when it found as a fact and concluded as a matter of law that plaintiff did not sustain a specific traumatic incident on 23 June 1993. We agree.

North Carolina General Statutes § 97-2(6) (Cum. Supp. 1995), defines injury as an

> accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident. With respect to back injuries, however, where injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, "injury by accident" shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident. . . .

Thus, there are two theories upon which a back injury can be compensated: (1) if the claimant was injured by accident; or (2) if the injury arose from a specific traumatic incident. *Fish v. Steelcase, Inc.*, 116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), *cert. denied*, 339 N.C. 737, 454 S.E.2d 650 (1995); *Richards v. Town of Valdese*, 92 N.C. App. 222, 224, 374 S.E.2d 116, 118 (1988), *disc. review denied*, 324 N.C. 337, 378 S.E.2d 799 (1989). In this case, plaintiff is alleging that his injury arose from a specific traumatic incident.

This Court in *Richards* stated that "the General Assembly . . . recognized the complex nature of back injuries, and did not intend to limit the definition of specific traumatic incident to an instantaneous occurrence. Back injuries that occur gradually, over long periods of time, are not specific traumatic incidents; however, we believe that events which occur contemporaneously, during a cognizable time period, and which cause a back injury, do fit the definition intended by the legislature." *Id.* at 225, 374 S.E.2d at 118-19. Plaintiff contends that his injury occurred during a cognizable time period, and that he is therefore entitled to compensation. We agree.

Thus, we address whether plaintiff presented credible and competent evidence that he sustained a compensable injury during a judicially cognizable time period. The Full Commission found that plaintiff had been experiencing pain in his lower back and down his left leg for approximately two weeks prior to the alleged traumatic incident and that plaintiff's testimony about the sudden onset of a different pain while lifting a case of drinks at New York Bagels was not credible or convincing and that "[p]laintiff's back problems developed gradually and worsened over the course of weeks." The Full Commission went on to conclude that the record fails to establish that plaintiff suffered an injury as a result of a specific traumatic incident on 23 June 1993.

It is well-established that the findings of fact and conclusions of law of the Full Commission are conclusive and binding on this Court if supported by competent evidence. *Fish*, 116 N.C. App. 703, 449 S.E.2d 233. This is so, even if evidence exists which would support a contrary finding. *Id.* However, conclusions of law predicated on these findings are subject to review by appellate courts. *Id.*

The Full Commission erred in its findings and conclusions of law that the injury did not occur at a cognizable time. Plaintiff's evidence tends to show that on 23 June 1993, he suffered a specific injury while lifting a case of drinks at New York Bagels at approximately 7:30 a.m.

Plaintiff next argues that the Full Commission erred when it concluded that there was insufficient medical evidence to support a finding that plaintiff's massive herniated disc was caused by a specific incident on 23 June 1993.

Plaintiff's medical evidence shows that Dr. Channer with Beach Medical, in an office note, recorded that plaintiff's symptoms increased on 23 June 1993 while lifting a box on the job; Dr. Water's patient history notes that plaintiff had a "specific lifting incident" on 23 June 1993 and that the subsequent surgery was related to the job; and Dr. Rish, who submitted a second opinion for the insurance carrier, confirmed the back injury and the date upon which it occurred. Thus, plaintiff argues that Commissioner J. Randolph Ward's statement that "[t]he medical evidence in this case is so compelling to me . . . [,]" best describes their position especially since defendant did not provide any medical evidence to contradict the medical evidence offered by Drs. Channer, Water and Rish. Accordingly, the Commission's alternative finding of fact was in error.

Plaintiff's final argument is that the Full Commission erred when it failed to allow plaintiff's motion to reopen the evidence and depose Dr. David C. Waters. North Carolina General Statutes § 97-85 (1991), provides that the Commission may, if good cause is shown, reconsider the evidence and receive additional evidence. However, "[t]he question of whether to reopen a case for the taking of additional evidence is addressed to the sound discretion of the Commission, and its decision is not reviewable on appeal in the absence of a manifest abuse of that discretion." *Pickrell v. Motor Convoy, Inc.*, 82 N.C. App. 238, 243-44, 346 S.E.2d 164, 168 (1986), *rev'd on other grounds*, 322 N.C. 363, 368 S.E.2d 582 (1988). In this case, the Commission found in its alternative finding of fact that the medical evidence was insufficient, thus, it is arguable that allowing additional medical evidence to

be taken would constitute good cause sufficient to allow plaintiff's motion to reopen the evidence in order to depose Dr. Waters.

For the reasons stated above, we hold that the Commission erred; therefore, this action is reversed and remanded.

Reversed and remanded.

Judges MARTIN, JOHN C. and McGEE concur.