The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer and the briefs on appeal to the Full Commission. Both parties waived oral argument. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employee-employer relationship existed between the parties at the time of the alleged incident.
3. The Kroger Company was insured and the Continental Casualty Company was the carrier on the risk at the time of the alleged incident.
4. The alleged date of the plaintiffs back injury was on or about September 3, 1997.
5. The average weekly wage of plaintiff at the time of the injury was $126.21.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was thirty-five years of age on the date of the hearing before the Deputy Commissioner. He began working for Kroger in July 1997 part-time as a produce clerk.
2. On or about the evening of Monday September 1, 1997, around 7:30 p.m., co-employee Thelma McNair asked Plaintiff to help her empty some heavy trash barrels. Plaintiff had some empty boxes on a cart that he was going to take to the trash. He took a trash barrel loaded with watermelon rinds and cantaloupe rinds and began pushing it with his left hand while pulling the cart with his right hand. Ms. McNair pushed the other trash barrel. As they passed through the back doors headed to where the trash was to be emptied, a wheel of the trash barrel Plaintiff was pushing got stuck on a piece of wood and the barrel began to tip over. Plaintiff tried to keep the trash barrel from falling, but it tipped over anyway. Plaintiff felt a pull in the small of his back but thought it was just a strained muscle. Ms. McNair helped him clean up the spilled trash. Plaintiff reported to her at that time that he thought he had hurt his back.
3. On Saturday September 6, 1997, plaintiff reported to his supervisor, Ken Tuchscherer, that he had hurt his back at work and that his back pain was worsening. With regard to plaintiffs report of the incident to his supervisor, Mr. Tuchscherer testified that the only reason it was not reported until September 6 was because they had not worked on the same days during that week.
"Well, I heard about it the end of the week because I believe he was off at the beginning of the week and I was off in the middle, so I didn't see him, the supervisor testified.
4. Based on the testimony of both Thelma McNair and Ken Tuchscherer, the Full Commission finds that plaintiff related the incident and the consequent back pain immediately to his co-worker and reported the incident and described his worsening back pain to his supervisor the first time they worked together after the incident, on September 6, 1997.
5. On Monday September 8, 1998, plaintiff saw his family physician, Dr. Watts, with complaints of low back pain. Plaintiff reported to Dr. Watts that he had been doing a lot of heavy lifting the prior week, loading and unloading trucks. Dr. Watts records did not mention any incident with the trash barrel.
6. On his September 12, 1997 follow-up visit to Dr. Watts, plaintiff again reported that he did a lot of lifting in his job at Kroger, but made no mention of any specific injury.
7. On September 17, 1997, plaintiff was seen by Dr. Montgomery at Raleigh Orthopaedic Clinic with complaints of low back and left leg pain. His records did not reflect any specific acute injury. The history was similar to that given to Dr. Watts, that plaintiff did a lot of lifting at work and woke up one morning with back pain.
8. Plaintiff spoke with the store manager, Larry Roach, on or about September 24, and made a written statement on September 26, 1997. In this written statement, plaintiff mentioned the incident with the trash barrels.
9. On September 30, 1997, plaintiff gave a recorded statement to a claims adjuster for the carrier. In this he related the incident with the trash barrel.
10. The inconsistent reports of the incident in medical notes and medical histories are not attributable to Plaintiff. Dr. Daniel J. Albright, who performed two surgeries on plaintiffs back as a result of the on-the-job injury, testified that he is not in the habit, in recording medical histories, of trying to be a detective or lawyer in determining exactly where and when things happened. His main emphasis in taking and writing a patients medical history is determining what facts are necessary to proper medical treatment.
11. The events involving the trash barrel constituted an interruption in the work with unusual and unforeseen consequences and thus were an "accident within the meaning of the Workers Compensation Act. Plaintiff suffered medical costs and lost earning capacity as a result of this injury by accident that occurred both within the course and scope of plaintiffs job. The events also constituted a specific traumatic incident of the work assigned since they resulted in a back injury related to a cognizable period of time.
12. The injury by accident and specific traumatic incident caused damage to plaintiffs back. Dr. Albright performed two surgeries as a result of the compensable injury. Both were reasonably necessary to effect a cure and provide relief. The first was on October 10, 1997, to correct problems from a ruptured disk at L4-5. The plaintiff was recovering from this surgery when, on Saturday October 18, 1997, he was arising from a squatting position and felt a lot of left calf pain and numbness in the left calf. Upon examination, he was found to have re-ruptured the disk at L4-5. Such re-ruptures occur in 5 to 10 percent of disk rupture surgeries. This re-herniation was caused by the first surgery in combination with the compensable injury.
13. Plaintiff suffered wage loss, loss of earning capacity and reasonable medical expenses as a result of his compensable injury. Plaintiff will reasonably require additional medical costs as a result of his compensable injury, including medical visits and medication, into the indefinite future. Plaintiff testified, and the Full Commission finds as a fact, that he missed work 28 to 30 weeks as a result of the injuries, surgeries and other medical treatment.
14. At the time of the hearing before the Deputy Commissioner, plaintiff had not reached maximum medical improvement and had not received a rating.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on or about September 1, 1997. N.C. Gen. Stat. 97-2(6).
2. Plaintiff sustained a compensable specific traumatic incident on or about September 1, 1997. N.C. Gen. Stat. 97-2(6).
3. There are two theories upon which a back injury can be compensated: (1) if the claimant was injured by accident; or (2) if the injury arose from a specific traumatic incident. Fish vs.Steelcase, Inc., 116 N.C. App. 703, 449 S.E.2d 233 (1994), cert.denied, 339 N.C. 737, 454 S.E.2d 650 (1995); Glynn v. PepcomIndustries, 122 N.C. App. 348, 469 S.E.2d 588 (1996). The 1983 amendment, which added the second theory, was enacted by the Legislature with the intent to relax the often-stringent requirement of the definition of accident. Bradley v. E.B.Sportswear, Inc., 77 N.C. App. 450, 335 S.E.2d 52 (1985). InRichards v. Town of Valdese, 92 N.C. App. 222, 374 S.E.2d 116
(1988), disc. review denied, 324 N.C. 337, 378 S.E.2d 799 (1989), the Court stated that the General Assembly recognized the complex nature of back injuries, and did not intend to limit the definition of specific traumatic incident to an instantaneous occurrence. Back injuries that occur gradually, over long periods of time, are not specific traumatic incidents; however, we believe that events which occur contemporaneously, during a cognizable time period, and which cause a back injury, do fit the definition intended by the legislature. Id. at 225, 374 S.E.2d at 118-19.
4. Plaintiffs compensable injuries resulted in loss of earning capability, wage loss, and medical costs, including two back surgeries. Plaintiff is entitled to temporary total compensation of $84.13 per week (two thirds of the stipulated average weekly wage) from October 10, 1997, until he returns to work at the same or greater wages or until further order of the Industrial Commission. The compensation shall be pro-rated for partial weeks and partial days, for those weeks, partial weeks and partial days he was unable to work by reason of his compensable injuries and medical care.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for the two surgeries and all other medical costs resulting from plaintiffs injuries that were or are reasonably necessary to effect a cure or provide relief. This includes medical visits and medication both past and present and in the future.
2. Defendants shall pay to plaintiff temporary total compensation of $84.13 per week (two thirds of the stipulated average weekly wage) from October 10, 1997, until he returns to work at the same or greater wages or until further order of the Industrial Commission. Such compensation shall be pro-rated for partial weeks and partial days, for those weeks, days or partial days he was unable to work by reason of his compensable injuries and medical care. At the minimum, such lost time was 28 weeks. Such of the foregoing that has accrued to the date of this Opinion and Award shall be paid in a lump sum, subject to the attorney fee set forth below. Thereafter, any ongoing compensation shall be paid weekly the week after it occurs with 25% of such amount payable to plaintiffs attorney.
3. Defendants shall pay directly to plaintiffs attorney 25% of the lump sum set forth in paragraph 2 above and 25% of any other compensation payable to plaintiff.
4. Defendants shall pay the costs, including the expert witness fee of $500 previously approved for Dr. Albright.
This 20th day of April 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
S/_______________ DIANNE C. SELLERS COMMISSIONER