***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ford and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this action.
2. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At all relevant times, an employer-employee relationship existed between plaintiff and Goodmark Foods.
4. At all relevant times Goodmark Foods was self insured, with Sedgwick CMS, Inc. as servicing agent.
5. Plaintiff's average weekly wage was $430.00.
6. This is a claim for a back injury either as an accident or a specific traumatic incident with the alleged event occurring on June 11, 1999.
7. After June 11, 1999, plaintiff was temporarily totally disabled as a result of his back condition until July 5, 1999. Plaintiff returned to work on July 6, 1999 and worked until September 8, 1999. Plaintiff has been temporarily totally disabled as a result of his back condition beginning on September 9, 1999 and continuing.
8. During plaintiff's period of disability, he received benefits under a disability plan and employer may be entitled to a credit for benefits received by plaintiff
9. The parties agreed to stipulate to all of the medical records regarding the care and treatment received by plaintiff
10. The issues to be determined as a result of the hearing before the Deputy Commissioner in this case are whether plaintiff experienced an accident or a specific traumatic incident on June 11, 1999, and if so, to what benefits is plaintiff entitled.
 *********** Based upon all the competent evidence of record and reasonableinferences flowing therefrom, the Full Commission makes the followingadditional:
 FINDINGS OF FACTS
1. Plaintiff, 52 years old at the time of the hearing before the Deputy Commissioner, was employed by Goodmark Foods as a grinding line operator on the second shift and had worked for Goodmark Foods on a permanent basis since September 1994. Plaintiff worked on grinding line number one where he lifted boxes containing forty to seventy pound blocks of frozen meat off a pallet, removed the blocks of meat from the boxes, lifted them onto a four foot high table, and flipped or threw the blocks of meat from the table into a chute leading to the grinding apparatus.
2. On June 11, 1999, as plaintiff threw a block of frozen meat into the chute on grinding line number one, he suddenly felt pain across his back and down both legs. Plaintiff immediately shouted out in pain. MacKinley Harris, the lead person on grinding line number one, and Shawn Williams, another co-worker, responded to plaintiff's shout by coming over to him. When asked, plaintiff told Harris and Williams that he wasnot all right and, further, agreed to let Harris finish loading plaintiff's remaining blocks of meat into the chute. On the advice of Harris, plaintiff went into the office and sat down while Mr. Harris finished plaintiff's shift for him.
3. Plaintiff's testimony regarding the events that happened at work on June 11, 1999, namely that a specific traumatic incident occurred at a cognizable time, interrupted his normal work routine and resulted in an injury to his back, was corroborated by the testimony of three of his co-workers: MacKinley Harris, Shawn Williams, and Theodore Terry. Harris testified that while working the second shift on June 11, 1999 he heard plaintiff "holler `oh" and when he asked plaintiff if he was all right, plaintiff said "no." Likewise, Shawn Williams testified that while working the second shift on June 11, 1999 he heard plaintiff "shout out," then "ran over" to where plaintiff was working, saw plaintiff "bent over the meat," and heard plaintiff say that he felt pain in his back and legs. Theodore Terry testified that while working the second shift on June 11, 1999 he "happened to look over" toward plaintiff, saw that plaintiff was "in pain," and asked plaintiff if he was ok, to which plaintiff responded "no." Additionally, Terry testified that when he later looked back over toward plaintiff's post, he "saw Mac(kinley) (Harris) throwing this meat over there" and "knew right then something was wrong."
4. After Harris completed plaintiff's shift, plaintiff left work, went home, and got into bed. During the night, plaintiff awoke and tried to get out of bed but was unsuccessful because he had no feeling in his legs. The next morning, plaintiff was able to get out of bed but was still experiencing numbness in his right leg and pain across his back.
5. Plaintiff was scheduled to return to work on Monday, June 14, 1999 at 4 p.m. Plaintiff phoned his supervisor, Al Anderson, however, on June 14, 1999 prior to the start of his shift and advised Anderson that he would not be coming to work that day because his "back was hurting." Plaintiff did not discuss the cause of his back pain with Anderson.
6. On Monday, June 14, 1999 plaintiff also called Kaiser Permanente to schedule an appointment to see a physician about his back pain. He was not able to get an appointment until Wednesday, June 16, 1999. Thereafter, on July 2, 1999, a lumbar spine MRI was performed, which showed "desiccated, degenerated L2-3, L3-4 and L4-5 discs" with "prominent diffuse bulging disc contours." In August of 1999, plaintiff was referred by Kaiser to Raleigh Orthopaedic Clinic.
7. Plaintiff was initially evaluated at Raleigh Orthopaedic Clinic on August 10, 1999, at which time he answered a "New Problem Questionnaire." Plaintiff indicated on this questionnaire that his symptoms had started "suddenly," approximately two months prior to the August 10, 1999 medical appointment. Additionally, plaintiff reported on the questionnaire that the "pain started . . . after work." Plaintiff was not able to finish describing his back problem on the questionnaire, however, "because the doctor called me at that time."
8. Dr. Kurt Ehlert was plaintiff's initial treating physician at the Raleigh Orthopaedic Clinic. During his initial evaluation of plaintiff on August 10, 1999, Dr. Ehlert reported that plaintiff's symptoms of "low back and right leg pain" began "insidiously two months ago." Dr. Ehlert also noted that plaintiff "had not been doing any unusual activity" prior to the onset of the pain. This statement is consistent with plaintiff's testimony that the incident at work which precipitated his back pain entailed throwing or flipping a block of meat in the course of his "normal duty in the job."
9. Dr. Ehlert eventually referred plaintiff to Dr. Leonard Nelson Jr., also of Raleigh Orthopaedic Clinic. In his initial evaluation report, dated October 7, 1999, Dr. Nelson did not address the circumstances surrounding the onset of plaintiffs back pain. In his deposition, Dr. Nelson explained his failure to address these circumstances by saying he does not "put much correlation whatsoever behind a person's pain and what actions he is performing." Dr. Nelson further testified that "it's not an important factor in my medical treatment" to ask a patient, "(W)hat were you doing the second your pain came on?"
10. On December 7, 1999, following an extensive course of conservative care, Dr. Nelson performed a lumbar spinal fusion on plaintiff's back.
11. Dr. Nelson testified, and the Full Commission finds as fact, that it was "likely" that an incident such as the June 11, 1999 incident described by plaintiff would be a cause of or contribute to the disabling back condition that ultimately required fusion surgery, so long as "there was no significant length of time when (plaintiff) was nonpainful." The medical evidence before the Commission clearly shows that plaintiff experienced continuous back pain since the incident on June 11, 1999. Specifically, Dr. Ehlert reported in his final medical note dated September 29, 1999 that plaintiff "has had no change in his symptoms." Likewise, Tracy Reese, plaintiff's physical therapist, reported on September 3, 1999 that plaintiff's "significant right lower back pain which extends into the right lower extremity" has "progressively worsened over the past two months." Additionally, the medical notes from Kaiser Permanente indicate that plaintiff was excused from work as of June 14, 1999 due to low back pain and that plaintiff reported "increasing back pain" on July 23, 1999. Dr. Nelson further testified, and the Full Commission finds as fact, that an incident such as the June 11, 1999 incident described by plaintiff would also "likely" aggravate a pre-existing back problem, such as degenerative disc disease.
12. Although plaintiff was aware of how to file a workers' compensation claim, as evidenced by the fact that he had previously filed incident reports regarding on the job injuries in 1995 and 1997, that is of no particular significance here. Plaintiff, a layman untrained in the law, believed that he had to suffer an accident in order for the incident to be covered under Workers Compensation. It was not until he conferred with a lawyer that he learned about the concept of specific traumatic incident and it was not until then that his claim was filed. Although the specific traumatic incident occurred on June 11, 1999, and plaintiff's Form 18 was not filed until February 4, 2000, defendant was not prejudiced thereby. It was put on notice of the claim and had the opportunity to investigate and direct medical care as soon as plaintiff was advised by competent legal authority that he had a valid claim and, in any event, before the running of the two-year statute of limitations.
13. As of the date of this Opinion and Award plaintiff had not reached maximum medical improvement and continued to be unable to earn wages because of his compensable injury.
 *********** Based upon the foregoing Stipulations and Findings of Fact the FullCommission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable specific traumatic incident of the work assigned on June 11, 1999 resulting in loss of wage earning capacity and medical expenses. N.C. Gen. Stat. § 97-2(6).
2. There are two theories upon which a back injury can be compensated: (1) if the claimant was injured by accident; or (2) if the injury arose from a specific traumatic incident. Fish vs. Steelcase,Inc., 116 N.C. App. 703, 449 S.E.2d 233 (1994), cert. denied, 339 N.C. 737,454 S.E.2d 650 (1995); Glynn v. Pepcom Industries, 122 N.C. App. 348,469 S.E.2d 588 (1996). The 1983 amendment, which added the second theory, was enacted by the Legislature with the intent to relax the often-stringent requirement of the definition of accident. Bradley v.E.B. Sportswear, Inc., 77 N.C. App. 450, 335 S.E.2d 52 (1985). InRichards v. Town of Valdese, 92 N.C. App. 222, 374 S.E.2d 116 (1988),disc. review denied, 324 N.C. 337, 378 S.E.2d 799 (1989), the Court stated that
 the General Assembly recognized the complex nature of back injuries, and did not intend to limit the definition of specific traumatic incident to an instantaneous occurrence. Back injuries that occur gradually, over long periods of time, are not specific traumatic incidents; however, we believe that events which occur contemporaneously, during a cognizable time period, and which cause a back injury, do fit the definition intended by the legislature.
Id. at 225, 374 S.E.2d at 118-19.
3. Plaintiff is entitled to compensation at the rate of $286.67 per week from June 11, 1999 until July 5, 1999 and from September 9, 1999 to the date of this Opinion and Award and continuing. N.C. Gen. Stat. § 97-29.
4. Defendants are entitled to a credit for disability payments made toplaintiff pursuant to an employer-funded disability plan. N.C. Gen.Stat. § 97-42.
5. Defendants are liable for medical expenses incurred in the past by plaintiff and to be incurred in the future by plaintiff as a result of his compensable injury to the extent that such expenses were incurred in treatment reasonably necessary to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-25, 97-2(19).
 ***********
Based upon the foregoing Stipulations, Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney fee set forth below, defendants shall pay to plaintiff $286.67 per week from June 11, 1999 until July 5, 1999 and from September 9, 1999 to the date of this Opinion and Award and continuing until such time as plaintiff regains wage earning capacity or until further order of the Industrial Commission. The amount that has accrued to the date of this Opinion and Award shall be paid in two lump sums. Defendants shall pay to plaintiff three-fourths of the accrued amount and defendants shall pay directly to plaintiff's counsel one-fourth of the accrued amount. Thereafter defendants shall pay $286.67 per week to the plaintiff, with every fourth check going directly to plaintiff's counsel. Defendants may take a credit against the lump sum due to plaintiff for disability payments made to plaintiff pursuant to an employer-funded disability plan. No credit shall be taken with respect to the attorney fee amount.
2. Defendants shall pay interest at the rate of eight percent per year from September 20, 2000, to the date paid on all compensation due under paragraph one of this award. Interest on the compensation paid to plaintiff's attorney shall be paid to plaintiff rather than plaintiff's attorney.
3. Defendants shall reimburse the payers for medical expenses incurred in the past by plaintiff by reason of his compensable injuries and shall pay medical expenses incurred in the future by plaintiff as a result of his compensable injury to the extent that such expenses were or are to be incurred in treatment reasonably necessary to effect a cure, provide relief or lessen the period of disability.
4. Defendants shall pay the costs.
This 7th day of December, 2001.
 S/_______________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER