* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon review of the evidence, reverses in part and affirms in part the Opinion and Award of the Deputy Commissioner. *Page 2 
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties at all relevant times.
3. Defendant-Employer was insured for workers' compensation coverage at all relevant times with Kemper Insurance Company (insurer) and Lumbermens Mutual Casualty Company (carrier).
4. The parties stipulated into evidence a packet of medical records and reports consisting of 163 pages.
5. A Form 22 wage chart and time records were subsequently submitted by Defendants without objection and were received into evidence.
6. The pre-trial agreement dated 1 July 2002, which was submitted by the parties, is incorporated herein by reference.
7. Plaintiff contends that the contested issues to be tried before the Commission are:
 a. Did Plaintiff have a compensable injury on 28 October 1999?
 b. Did Plaintiff have a compensable injury on 16 May 2000?
 c. Did Plaintiff have compensable injury on 26 May 2000?
 d. What are the compensable consequences of each of the alleged injuries by accident suffered by Plaintiff, if any?
8. Defendants contend that the contested issues to be tried before the Commission are: *Page 3 
 a. Are Plaintiff's claims barred under N.C. Gen. Stat. § 97-22?
 b. Does Plaintiff suffer from a compensable occupational disease as defined by N.C. Gen. Stat. § 97-53, as a result of his employment with Defendant-Employer?
 c. Any and all issues identified by Plaintiff?
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 49 years old. Plaintiff graduated from high school and began working for Defendant-Employer in February 1985. Defendant-Employer manufactures turbo chargers for diesel engines.
2. Plaintiff worked on an assembly line where turbo chargers for diesel engines were put together, boxed, and packed for shipment. By October 1999, Plaintiff could perform any of the duties on the line; however, at that time, he was working on Line 1 where turbo chargers weighing up to 87 pounds were assembled.
3. On 28 October 1999 at approximately 5:30 p.m., Plaintiff developed low back pain while lifting multiple 87-pound turbo chargers. Plaintiff returned to work the next day (Friday) and then rested over the weekend. Plaintiff presented to his chiropractor, Dr. James Dutton, on 1 November 1999, complaining of left hip pain. Prior to 1 November 1999, Plaintiff had not sought chiropractic treatment from Dr. Dutton for more than two and a half years. *Page 4 
4. Plaintiff missed approximately two weeks from work due to his workplace injury on 28 October 1999. After several weeks of chiropractic treatment, Dr. Dutton referred Plaintiff to Dr. Harley, an orthopedic surgeon.
5. Dr. Harley examined Plaintiff on 24 November 1999. Plaintiff told Dr. Harley that he had developed back pain after moving heavy turbo chargers at work, but indicated that he had not filed a workers' compensation claim.
6. Dr. Harley ordered an MRI, which showed a bulging disc problem throughout Plaintiff's lumbar spine, but no evidence of specific nerve root impingement. Plaintiff returned to Dr. Harley on 2 December 1999, and reported that his symptoms had improved significantly. Dr. Harley noted that Plaintiff was going to try to return to work on 13 December 1999. Dr. Harley further noted that the chiropractic treatment seemed to be helping and that Plaintiff should return to him for treatment as needed. Although Dr. Harley released Plaintiff to return to work on 13 December 1999, Dr. Dutton wrote him out of work through 27 December 1999. Plaintiff did not receive short-term disability through Defendant-Employer in 1999.
7. Plaintiff returned to work in January 2000.
8. Plaintiff was treated by Dr. Bruce Kelly, his primary care physician, on 7 March 2000, but did not discuss back problems with him. The purpose of that visit was for an unrelated blackout spell. Other than his hypoglycemia and migraines, Plaintiff reported that he continued to feel well and be active.
9. In addition to his 28 October 1999 injury, Plaintiff testified that he sustained two more workplace injuries in May 2000. Plaintiff testified that he felt a stinging pain in his neck on 16 May 2000, while lifting turbo chargers off of the orientation stand. Plaintiff further testified that on 26 May 2000, *Page 5 
he re-injured his low back while packing turbo chargers on a new Detroit Diesel line. He did not report either injury to Defendant-Employer or to Dr. Dutton.
10. Plaintiff continued to treat with Dr. Dutton. By 14 July 2000, there were notes describing neck pain in addition to back pain. Plaintiff had previously injured his neck in a motor vehicle accident approximately twenty years earlier.
11. In July 2000, Plaintiff was referred to Dr. Mark Moody, an orthopedic spine specialist. Dr. Moody examined Plaintiff on 21 August 2000. Plaintiff complained of neck and interscapular pain, numbness and tingling in both arms, and left low back pain. Plaintiff indicated to Dr. Moody that he had problems since the motor vehicle accident, but that the symptoms in his arms had developed recently.
12. Dr. Moody ordered an MRI of both the cervical and lumbar spine. The test showed severe spinal stenosis at C3-4, C4-5, and C5-6, and bilateral foraminal narrowing at L4-5. He recommended that Plaintiff undergo epidural steroid injections to the lumbar spine and surgery to decompress and fuse the three involved levels of the cervical spine.
13. Plaintiff had the steroid injection on 19 October 2000. His neck surgery was on 20 October 2000.
14. Before these procedures were performed, Plaintiff went to Linda Stewart, the Human Relations Coordinator for Defendant-Employer, and inquired about short-term disability compensation. He did not mention anything about an injury at work to Ms. Stewart. Further, when completing the forms regarding disability associated with the neck surgery, Plaintiff checked the box stating that the condition for which he was having surgery was not the result of a work-related illness or injury. *Page 6 
15. After the surgery, Plaintiff seemed to have problems swallowing. Accordingly, Dr. Moody operated on Plaintiff on 7 April 2001, to remove the hardware installed during the first surgery.
16. Dr. Moody released Plaintiff to work on 10 April 2001, with no restrictions. After working three days, Plaintiff's pain increased and he stopped coming to work. For the first absent week, Plaintiff called in to the office as was required by the attendance policy. He later stopped calling in to tell them that he would be absent. After three or four days of not showing up for work and failing to call in, Plaintiff's employment was terminated on 30 April 2001, in accordance with the attendance policy. Plaintiff did not appeal the decision.
17. Plaintiff continued to treat with Dr. Moody, who recommended another steroid injection on 1 May 2001. However, Plaintiff had no insurance and could not afford to pay for the treatment. He returned to see Dr. Moody on 10 September 2001.
18. On 11 March 2002, Dr. Moody indicated that Plaintiff had reached maximum medical improvement and no further treatment was necessary.
19. In July 2001, Defendant-Employer received a Form 18 employee's report of injury for Plaintiff's injuries. It was Defendant-Employer's first written notice of the injuries.
20. Plaintiff stated that he did not report his 28 October 1999 injury earlier because when he had filed a previous workers' compensation claim in 1991, he was moved to a job with more difficult duties. He believed Defendant-Employer was trying to make him quit. He also stated that he feared losing his job. The Full Commission finds as fact that Plaintiff's testimony concerning his reasons for not timely filing his workers' compensation claims to be credible and constitutes a reasonable excuse for failing to provide notice of injury within 30 days. *Page 7 
21. Ms. Stewart testified that she did not know what different medical treatment would have been recommended had Defendants known of the work-related nature of Plaintiff's injuries. No lay or medical evidence was produced that suggested different medical treatment would have been provided to Plaintiff to minimize the seriousness of his injuries. In addition, no evidence was introduced that Defendants were unable to investigate the claim due to Plaintiff's delay in filing written notice of his 28 October 199 injury. Accordingly, the Full Commission finds that Plaintiff's late filing of written notice of accident has not prejudiced Defendants and Plaintiff's failure to timely report the injury is excused.
22. Plaintiff's testimony that he sustained a work-related injury to his lumbar spine on 28 October 1999, is accepted as credible. Although Plaintiff did not report a work-related injury to Defendant-Employer at the time, he sought chiropractic treatment four days later with Dr. Dutton. Prior to 1 November 1999, Plaintiff had not sought chiropractic treatment from Dr. Dutton for more than two and a half years. Plaintiff was referred to Dr. Harley. On 24 November 1999, Plaintiff was treated by Dr. Harley and gave a history of experiencing lumbar spine and left hip pain continuously since lifting heavy turbo chargers at work.
23. Based on the greater weight of the evidence, Plaintiff sustained an injury to his lower back on 28 October 1999, as a direct result of lifting turbo chargers while working for Defendant-Employer. The injury occurred during a cognizable period of time and arose out of and in the course of his employment.
24. Dr. Moody was of the opinion that Plaintiff's work injury on 28 October 1999, "could have aggravated and caused the onset of symptoms in the neck and back." Dr. Moody testified that repetitive bending, lifting and twisting associated with Plaintiff's employment with Defendant-Employer contributed to the aggravation of Plaintiff's lumbar degenerative disc *Page 8 
disease. Dr. Moody further testified that Plaintiff's employment with Defendant-Employer contributed to placing him at an increased risk of developing the back and cervical problems for which he treated Plaintiff.
25. Dr. Kelly was of the opinion that Plaintiff's 28 October 1999 workplace injury possibly aggravated, accelerated or contributed to the aggravation of acceleration of his underlying degenerative disc disease. Dr. Kelly testified that Plaintiff's workplace injury did not cause his degenerative disc disease, but "very possibl[y] superimposed on what he had . . . [s]o my answer would be yes, that I think it could have, could have aggravate[ed], accelerated or contributed." Dr. Kelly further testified that Plaintiff's employment with Defendant-Employer placed him at an increased risk of developing back and neck problems taking into consideration his underlying degenerative disease.
26. Plaintiff has presented sufficient evidence to establish a causal relationship between his 28 October 1999 workplace injury and the conditions for which he was being treated through 27 December 1999.
27. As a result of his work-related injury on 28 October 1999, Plaintiff was incapable of working from 1 November 1999 through 27 December 1999. Although Dr. Harley released Plaintiff to return to work on 13 December 1999, Dr. Dutton wrote him out of work through 27 December 1999. Plaintiff did not receive short-term disability compensation through the employer in 1999.
28. Plaintiff's average weekly wage on 28 October 1999 was $ 666.19, which yields a compensation rate of $ 444.15 per week. *Page 9 
29. Plaintiff's need for medical treatment arising from his 28 October 1999 injury ended on 27 December 1999. Plaintiff's medical treatment after 27 December 1999, is not related to his compensable injury.
30. The treatment Plaintiff received from Dr. Dutton and Dr. Harley and the diagnostic tests ordered were reasonably required to effect a cure, provide relief, or lessen Plaintiff's disability.
31. With respect to the alleged injuries of May 2000, Plaintiff's allegations have not been accepted as credible. Plaintiff was not at work at all on 16 May 2000. Plaintiff did not report the alleged injury on 26 May 2000, to his supervisors or treating physicians. Furthermore, Plaintiff indicated that the injury occurred while working on the Detroit Diesel assembly line. However, that assembly line was not yet in operation on 26 May 2000.
32. Plaintiff has not proven by the greater weight of the credible and competent evidence that he sustained work-related injuries to the cervical spine on 16 May 2000 and again on 26 May 2000. After not seeing Dr. Dutton for over five months, Plaintiff returned to Dr. Dutton on 15 May 2000, complaining of left hip and low back pain. Plaintiff's complaints remained the same as noted from the medical records until late June 2000 to mid July 2000, when neck pain is first noted. Plaintiff concedes he did not tell his family physician Dr. Kelly he had a work-related injury.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 10 
 CONCLUSIONS OF LAW
1. "'Injury and personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident. With respect to back injuries, however, where injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, 'injury by accident' shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident." N.C. Gen. Stat. § 97-2(6) (2003).
2. Plaintiff sustained an injury by accident arising out of his employment with Defendants as a direct result of the work assigned on or about 28 October 1999. N.C. Gen. Stat. § 97-2(6). Plaintiff did not sustain an injury by accident on 16 May 2000, or 26 May 2000. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff is unable to point to any one lifting incident as the cause of his 28 October 1999 workplace injury; however, he has shown his injury occurred during a cognizable period of time while lifting turbo chargers weighing approximately 87 pounds. See Richards v. Town ofValdese, 92 N.C. App. 222, 224, 374 S.E.2d 116, 118 (1988). Back injuries that occur gradually are not specific traumatic incidents. However, events occurring contemporaneously that cause a back injury, during a cognizable time period, fit the definition of injury by accident. Glynn v. Pepcom Industries, Inc., 122 N.C. App. 348,469 S.E.2d 588 (1996).
4. A Plaintiff in a workers' compensation case has the burden of initially proving "each and every element of compensability," including a causal relationship between the injury and her employment.Whitfield v. Lab. Corp. of Amer., 158 N.C. App. 341, 350,581 S.E.2d 778, 784 (2003). "The quantum and quality of the evidence required to establish prima facie the *Page 11 
causal relationship will of course vary with the complexity of the injury itself." Hodgin v. Hodgin, 159 N.C. App. 635, 639,583 S.E.2d 362, 365 (2003). A Plaintiff must prove causation by a "greater weight" of the evidence. Phillips v. U.S. Air, Inc., 120 N.C. App. 538,541, 463 S.E.2d 259, 261 (1995). The North Carolina Supreme Court has also held that in cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation.Click v. Pilot Freight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391
(1980). Where medical opinion testimony is required, "medical certainty is not required, [but] an expert's 'speculation' is insufficient to establish causation." Holley v. ACTS, Inc., 357 N.C. 228, 234,581 S.E.2d 750, 754 (2003). Furthermore, the causal relationship must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility." Holley, 357 N.C. at 232,581 S.E.2d at 753.
It is permissible for the Industrial Commission to "infer causation where a medical expert offers a qualified opinion as to causation, along with an accepted medical explanation as to how such a condition occurs, and where there is additional evidence tending to establish a causal nexus." Adams v. Metals USA, 168 N.C. App. 469, 476, 608 S.E.2d 357,362, aff'd by 360 N.C. 54, 619 S.E.2d 495 (2005) (citing Johnson v.Piggly Wiggly of Pinetops, Inc., 156 N.C. App. 42, 52, 575 S.E.2d 797,804 (2003)).
"[Our Supreme] Court has allowed 'could' or 'might' expert testimony as probative and competent evidence to prove causation." Young v.Hickory Bus. Furniture, 353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000). However, "'could' or 'might' expert testimony [is] insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." Id. (citing Maharias v. Weathers Bros. Moving StorageCo., 257 N.C. 767, 767-68, 127 S.E.2d 548, 549 (1962)). *Page 12 
In the instant case, Dr. Moody testified that Plaintiff's work injury on 28 October 1999, "could have aggravated and caused the onset of symptoms in the neck and back." Dr. Moody testified repetitive bending, lifting and twisting associated with Plaintiff's employment with Defendant-Employer contributed to the aggravation of Plaintiff's lumbar degenerative disc disease. Dr. Moody further testified that Plaintiff's employment with Defendant-Employer contributed to placing him at an increased risk of developing the back and cervical problems for which he treated Plaintiff. Dr. Kelly testified that Plaintiff's 28 October 1999 workplace injury possibly aggravated, accelerated or contributed to the aggravation or acceleration of his underlying degenerative disc disease. Dr. Kelly further testified that Plaintiff workplace injury did not cause his degenerative disc disease, but "very possibl[y] superimposed on what he had . . . [s]o my answer would be yes, that I think it could have, could have aggravate[ed], accelerated or contributed." Dr. Kelly further testified that Plaintiff's employment with Defendant-Employer placed him at an increased risk of developing back and neck problems taking into consideration his underlying degenerative disease. Plaintiff has presented sufficient evidence to establish causation between his 28 October 1999 workplace injury and the conditions for which he was being treated through 27 December 1999.
5. Plaintiff did not report his injury within the time period set forth in N.C. Gen. Stat. § 97-22 (2003), which provides, "[N]o compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby." N.C. Gen. Stat. § 97-22. As found as fact above, Plaintiff had a reasonable excuse for failing to provide notice of injury within 30 days and Defendants were not prejudiced by plaintiff's late filing of written *Page 13 
notice of his injury by accident. Therefore, plaintiff's claim is not barred for failure to give written notice of injury within 30 days pursuant to N.C. Gen. Stat. § 97-22.
6. In order to receive disability compensation, the employee has the burden of proving the existence of that disability and its extent.Perkins v. U.S. Airways, ___ N.C. App. ___, 628 S.E.2d 402 (2006). The burden may be met in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment[;] or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. LowesProduct Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457
(1993). In the instant case, Plaintiff initially missed approximately two weeks from work beginning 1 November 1999. After several weeks of chiropractic treatment, Dr. Dutton referred Plaintiff to Dr. Harley, an orthopedic surgeon. Although Dr. Harley released Plaintiff to return to work on 13 December 1999, Dr. Dutton wrote him out of work through 27 December 1999.
7. As a result of his 28 October 1999 compensable injury, Plaintiff was incapable of earning wages from 1 November 1999 through 27 December 1999, and is entitled to compensation during this period. N.C. Gen. Stat. § 97-29.
8. Plaintiff's average weekly wage on 28 October 1999 was $ 666.19, which yields a compensation rate of $ 444.15 per week. N.C. Gen. Stat. § 97-2(5). *Page 14 
9. Defendants are obligated to pay for Plaintiff's medical treatment for his 28 October 1999 injury. The treatment Plaintiff received from Dr. Dutton and Dr. Harley and the diagnostic tests ordered were reasonably required to effect a cure, provide relief, or lessen Plaintiff's disability. N.C. Gen. Stat. §§ 97-19; 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Defendants shall pay to Plaintiff temporary total disability compensation at the rate of $ 444.15 per week for the period of 1 November 1999 through 27 December 1999, for the 28 October 1999 claim (I.C. No. 152652). Defendants shall pay Plaintiff in a lump sum.
2. The 16 May 2000 and 26 May 2000 claims (I.C. Nos. 152656 and 152657) are hereby DENIED.
3. Defendants shall pay for all medical expenses incurred by Plaintiff as a result of his compensable injury sustained on or about 28 October 1999, when bills have been submitted and approved according to procedures adopted by the Industrial Commission.
4. A reasonable attorney fee in the amount of 25% of the compensation approved and awarded for Plaintiff is approved and allowed for Plaintiff's counsel. The attorney fee shall be deducted from the accrued compensation due Plaintiff and paid directly to Plaintiff's attorney.
5. Defendants shall pay the costs.
This the ___ day of March 2007.
 S/____________________ BERNADINE S. BALLANCE *Page 15 
COMMISSIONER
CONCURRING:
 S/________________ PAMELA T. YOUNG COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER *Page 1